**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SHAWN LOUIS JACOBS,

      Applicant,

v.                                                                        No. CV 11-24 LH/CG

ERASMO BRAVO, et al.,

      Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Petitioner Shawn Louis Jacobs' *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody*, ('Petition') (Doc. 1), *Respondent's Answer to Petition for Writ of Habeas Corpus Challenging Conditions of Confinement (28 U.S.C. § 2254)*, ('Answer') (Doc. 7), and *Petitioner's Objections to Respondent's Answer to Petition for Writ of Habeas Corpus*, ('Response') (Doc. 10). Petitioner claims that his disciplinary conviction while incarcerated at the Guadalupe County Correctional Facility ('GCCF') violated his due process rights under the United States Constitution. (Doc. 1 at 3-7). Respondent contends that the Petition does not establish a violation of Petitioner's constitutional rights. (Doc. 7 at 11). The Court, having reviewed the parties' filings, the relevant law, and otherwise being fully advised in the premises, **RECOMMENDS** that the Petition be **DENIED ON THE MERITS**.

    **I.**     **Background**

Petitioner was convicted at trial in New Mexico state court of First Degree Murder and several other felonies in 1996. (*Id*. at 2-3; Doc. 7, Ex. A; Doc. 7, Ex. B). Petitioner was sentenced to life in prison plus sixty-nine and one half years and has been in custody since

1996. (Doc. 7 at 3; Doc. 7, Ex. B). In August and September of 2010, Petitioner was being incarcerated at GCCF. (Doc. 1 at 1). On August 31, 2010, S. Chavez, the recreation director at GCCF, was advised that Petitioner had forged his name on an inmate debit account memo. (Doc. 1 at 8; Doc. 7, Ex. D). S. Chavez denied signing the forged debit memo, and an 'Inmate Misconduct Form' was filed against Petitioner on August 31, 2010, charging him with A(25) Forgery. (Doc. 1 at 5, 8). A disciplinary officer conducted an investigation of the incident and Petitioner waived his right to remain silent and gave a written statement. (Doc. 7, Ex. D, E). Petitioner named inmate Michael Garcia as his legal representative. (Doc. 7, Ex. D). The disciplinary officer recommended that the report be handled as a 'MAJOR' level infraction. (*Id.*).

A misconduct hearing was held on September 10, 2010, but the hearing was continued to September 14 because Petitioner claimed that he had not yet received the disciplinary officer's findings and recommendations. (Doc. 7 at 5; Doc. 7, Ex. J at 1, Ex. G). At the September 14 hearing, Petitioner acknowledged that he had received all of the pertinent documents and he waived his right to remain silent. (Doc. 7, Ex. J at 1). Petitioner declined to be assisted by a staff member or inmate and he further declined to call any witnesses. (*Id.*). Petitioner submitted a motion to dismiss which raised a number of procedural objections to both the misconduct report and to the hearing itself. (Doc. 7, Ex. I at 1).

Petitioner argued that the misconduct report did not comport with GCCF institutional rules in that the report was supposed to list what physical evidence was recovered and the disposition of such evidence and the report did not do so. (*Id.*). While the misconduct report failed to mention any recovered evidence, the forged memo was introduced at the

disciplinary hearing and Petitioner was provided with a 'chain of custody' form which tracked the location of the forged memo following its discovery on August 31, 2010. (Doc. 7, Ex. H, Ex. J at 1). The disciplinary officer overruled Petitioner's objection, stating "[t]he Hearing Officer does confirm that the spot on the disciplinary report for evidence submitted to is blank however in the disciplinary officer's investigation it does indicate that the [sic] is a chain of custody submitted and a chain of custody is attached to the misconduct report . . ." (Doc. 7, Ex. J at 1).

Petitioner raised objections to the chain of custody form as well. GCCF policy purportedly dictates that "[a]ll contraband and weapons shall be logged and tracked by the staff member who first took custody by using an inventory/chain of custody form." (Doc. 7, Ex. I at 1). It is undisputed that M. Chavez, a prison employee who works on inmate accounts, was the first to call the forged document to S. Chavez' attention. (Doc. 7, Ex. C). However, rather than prepare the chain of custody form, as Petitioner contends she should have, M. Chavez handed the forged document to S. Chavez, and it was S. Chavez who filed the misconduct report and who prepared the chain of custody form. (Doc. 7, Ex. H, Ex. I at 1, Ex. J at 1). Petitioner claimed that S. Chavez "falsified" the report by filing it out even though M. Chavez was listed as the individual who recovered the evidence. (Doc. 7, Ex. I at 1). The disciplinary officer denied Petitioner's objection, noting that "[t]he chain of custody does not require a signature however only requires that the name of the party or place which the item was relinquished to is indicated on the chain of custody and therefore; is indicated ion [sic] this chain of custody." (Doc. 7, Ex. J at 1).

Petitioner further complained that the disciplinary hearing did not take place within seven working days of the discovery of the offense, as required by GCCF policy. (Doc. 7,

Ex. I at 2). The prison defines a 'working day' as Monday through Friday, excluding recognized holidays. (Doc. 1 at 5). Petitioner stated that the forged memo was discovered at 8:15 a.m. on August 31, 2010, and that the hearing would have to have been held by 8:15 a.m. on September 10, 2010, for it to be timely. (Doc. 7, Ex. I at 2).[1] Because the hearing was held at 10:00 a.m. on September 10 - almost two hours after 8:15 a.m. - Petitioner argued that the hearing was untimely. (*Id.*). Unsurprisingly, the disciplinary officer denied Petitioner's objection. (Doc. 7, Ex. J at 1).

Finally, Petitioner claimed that the hearing officer improperly granted herself an institutional continuance when she continued the September 10 hearing to September 14. (Doc. 7, Ex. I at 2-3). Petitioner contends that an institutional continuance must be served no later than the scheduled hearing date. (*Id.* at 2). Petitioner does not dispute that he was given notice of the continuance on the scheduled hearing date - September 10, 2010. Nevertheless, he claims that, because the hearing itself was in violation of the seven working day rule, the institutional continuance itself was also improper. (*Id.* at 3). The hearing officer denied Petitioner's objections, holding that Petitioner was appropriately notified of the continuance and that the continuance was ordered for Petitioner's convenience since he claimed that he was missing one of the charging documents. (Doc. 7, Ex. J at 1).

Petitioner was ultimately found guilty of MAJOR level infraction. (Doc. 7, Ex. K). Petitioner was ordered confined in disciplinary segregation for fifteen days, however that sentence was suspended pending one hundred eighty days of clear conduct. (*Id.*).

---

[1] Because Monday, September 6, 2010, was Labor Day, it did not count towards the seven working day rule at issue here. (*See* Doc. 7, Ex. J at 1).

Petitioner further forfeited forty-five days of commissary privileges. (*Id.*). Petitioner appealed the sentence, presenting the same procedural objections. (Doc. 7, Ex. L). Petitioner's sentence was ultimately affirmed by the Warden of GCCF. (Doc. 1, Ex. C).

Following the Warden's final decision, Petitioner filed a habeas corpus petition before the New Mexico's Fourth Judicial District Court, raising the same procedural objections. (Doc. 1 at 2; Doc. 7, Ex. P). The district court denied the petition and Petitioner then applied for a writ of certiorari to the New Mexico Supreme Court. (Doc. 7, Ex. Q, Ex. S). The New Mexico Supreme Court summarily denied the petition. (Doc. 7, Ex. S, Ex. T). Petitioner then submitted the instant Petition to this Court. Petitioner makes the same procedural arguments as those raised in his disciplinary proceedings. (*Compare* Doc. 1 at 3-6 *with* Doc. 7, Ex. I at 1-3).

## II.    Standards of Review

### i.    Deference Pursuant to 28 U.S.C. § 2254

Although Mr. Jacobs brings his Petition pursuant to 28 U.S.C. § 2254, it should properly be construed under 28 U.S.C. § 2241 because Petitioner is not attacking his underlying sentence, but rather the execution of that sentence. *See Hamm v. Saffle,* 300 F.3d 1213, 1216 (10th Cir. 2002) (construing a §2254 petition as one falling under §2241 because it challenged the execution of the sentence). *See also, Montez v. McKinna,* 208 F.3d 862, 865 (10th Cir. 2000) (attack on the execution of a sentence as it affects the duration of confinement fits better under §2241). Nevertheless, the deferential standards of 28 U.S.C. § 2254 still apply to Petitioner's case because his challenge to his disciplinary conviction was first heard in a state habeas corpus petition. *See Preble v. Estep*, No. 06-1195, 2006 WL 2212686, *2 (10th Cir. Aug. 4, 2006) (applying deferential standard in

28 U.S.C. § 2254(d) to a state prisoner's habeas petition under 28 U.S.C. § 2241 challenging a disciplinary conviction); See also Wheeler v. Hannigan, 37 F.App'x. 370, 2002 WL 432888 (10th Cir. Mar. 19, 2002); Powell v. Ray, 301 F.3d 1200, 1201 (10th Cir. 2002).

Pursuant to 28 U.S.C. § 2254(d), this Court must defer to a state court's determination of a federal constitutional issue so long as the state court's decision did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). A state court's determination is only entitled to deference if the state courts adjudicated Petitioner's claim "on the merits." Id. The Court notes that, while the New Mexico state courts summarily denied Petitioner's claims, the Supreme Court has recently held that "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication . . . to the contrary." Harrington v. Richter, 131 S.Ct. 770, 784-85 (2011) ("§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits."). Therefore, in order to obtain relief, Mr. Jacobs must show that there was no reasonable basis for the state court to deny relief. Id. at 784.

Furthermore, because Petitioner is proceeding pro se, this Court will liberally construe all of his filings. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this protection applies to the technical language of the Petition and not its substantive content. This Court will not supply additional factual allegations to supplement Petitioner's complaint or construct a legal theory on his behalf. Whitney v. New Mexico, 113 F.3d 1170,

1173-74 (10th Cir.1997).

### ii.     Due Process Rights in Prison Disciplinary Proceedings

Generally, a prisoner does not have a constitutional right to ensure that prison officials follow institutional policies to the letter. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. . . . [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Thus, "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 193).

Failure to follow prison regulations can constitute a constitutional violation only if the regulation creates a protected liberty interest. The due process clause standing alone does not confer prisoners with a liberty interest. *Sandin*, 515 U.S. at 480. The Supreme Court has found that prison actions which have some effect on the duration of an offender's incarceration or which "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life . . ." do create protected liberty interests. *Id* at 472, 484, 487; *Wolff v. McDonell*, 418 U.S. 539, 564-66 (1974); *see also Malik v. Kindt*, 1996 WL 41828, *1-2 (10th Cir. 1996). Therefore, the process that is due to a prisoner is dependant on the action's effect on the length of his sentence, not on the specific process mandated by prison regulations. *Lusero v. Welt*, 223 F.App'x 780, *3 (10th Cir. 2007); *Harrison v. Williams*, 2009 WL 4016104, *4 (W.D.Okla. 2009).

In the context of hearings in which an inmate's good-conduct time is deducted - a decision which would lengthen the prisoner's sentence and which therefore implicates a liberty interest - the Supreme Court has outlined three key procedural protections. Prisoners need only be provided with advance notice and a limited opportunity to call

witnesses and present evidence in his defense before a written statement of the reasons for the decision and the evidence upon which it is based is provided. *Wolff v. McDonell*, 418 U.S. 539, 564-66 (1974). In addition to these procedural requirements, discussed below, "some evidence" must support the conclusion of the administrative tribunal to satisfy the requirements of due process. *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

### III. <u>Analysis</u>

Petitioner claims that GCCF's failure to follow administrative policy with regard to disciplinary hearings violated his rights under the due process clause of the Fourteenth Amendment. (Doc. 1). Respondents assert that this case is not yet ripe for review because "Petitioner will not suffer the consequence of fifteen (15) days of segregation <u>if</u> he maintains clear conduct until March 26, 2011." (Doc. 7 at 10) (emphasis in original). The court disagrees. The fact that the GCCF hearing resulted in a partially suspended sentence does not render this case moot since Petitioner is attacking the process afforded him in the disciplinary proceedings. However, since Petitioner has not yet been transferred to administrative segregation, he cannot claim that his due process rights in avoiding transfer to more restrictive conditions of confinement were violated. *See Sandin v. Conner*, 515 U.S. 472 (1995).

The Court then turns to the question of whether Petitioner was afforded sufficient process under the standards elucidated in *Wolff v. McDonell*, 418 U.S. 539, 564-66 (1974).

While the *Wolff* Court held that prisoners have a liberty interest protected by the due process clause in their good time credits, it is not clear from the pleadings here that the administrative hearing had any effect on Petitioner's good time credits. The sentence imposed on Petitioner made no mention of good time credits being deducted. (Doc. 7, Ex. K). The 'good time figuring sheet' attached to the answer indicates that no good time credits were deducted as a result of the disciplinary conviction. (Doc. 7, Ex. N). However, Respondent, in his answer, appears to suggest that Petitioner's good time credits were indeed affected by the misconduct report. (*See* Doc. 7 at 10).

> Because the revocation of good time credits indicate a liberty interest, a limited due process right is recognized. Prison disciplinary proceedings are not criminal prosecutions; therefore, the federal constitution requires only that an inmate be provided with advance written notice of the charges, a limited opportunity to call witnesses and present evidence in his defense, and a written statement of the reasons for the decision and the evidence upon which it is based. *Wolf v. McDonnell,* 418 U.S. 539, 556, 564-66 (1972). *See also Mitchell v. Maynard,* 80 F.3d 1433, 1444-45 (10th Cir. 1996). The documents establish Petitioner was afforded all cognizable rights and has not suffered any due process or other constitutional violation.

(*Id*. at 10-11). Furthermore, Petitioner asserts that the misconduct conviction has indeed affected his eventual release date. (*See* Doc. 10 at 2 ("Petitioner has had points added to his custody (+6 points added), reports stay on the Petitioners prison file for (10) years, this all adds to security level, loss of certain good jobs. In the future the Petitioner will suffer at parol board, and my [sic] stop his parol off his life sentence charge.")). Regardless, even if the misconduct conviction implicated a liberty interest protected by the due process clause, the Court finds that Petitioner was afforded sufficient process at his disciplinary hearing.

As stated above, to meet the standards of due process in a disciplinary proceeding

under *Wolff*, "the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454 (1985). Even where petitioners assert other procedural violations, this Court's review "is limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary Committee's findings." *Mitchell v. Maynard,* 80 F.3d 1433, 1445 (10th Cir. 1996). Those benchmarks were met in Petitioner's case.

The record reflects that Petitioner was given advance written notice of the charges against him. Petitioner was presented with almost all of the relevant documentation prior to his appearance at the disciplinary hearing on September 10, 2010. (Doc. 7 at 5; Doc. 7, Ex. D; Doc. 7, Ex. J at 1). At the September 10 hearing Petitioner claimed that he had not received the disciplinary officer's findings and recommendations and the hearing was postponed until September 14 so that Petitioner could review that document. (Doc. 7 at 5; Doc. 7, Ex. J at 1, Ex. G). At the September 14 hearing Petitioner acknowledged that he had received all of the relevant documentation. (Doc. 7, Ex. J at 1 ("On September 14, 2010 A hearing was conducted in the case . . . Inmate acknowledged that he received a copy of all documents.")).

Petitioner was afforded an opportunity to call witnesses and present evidence in his defense. Petitioner was asked at the disciplinary hearing whether he wished to call any witnesses and Petitioner declined. (Doc. 7, Ex. J at 1). Petitioner was allowed to appoint inmate Michael Garcia as his legal representative, though it appears that Mr. Garcia was

10

not actually involved in the disciplinary hearing on September 14. (Doc. 7, Ex. D; Doc. 7, Ex. J at 1). Petitioner gave a written statement to the prison investigator and further filed a motion to dismiss which was considered at the disciplinary hearing. (Doc. 7, Ex. E; Doc. 7, Ex. I). Petitioner was afforded sufficient opportunities to present a defense, as required by *Wolff*.

Finally, following Petitioner's conviction, Petitioner was given a written statement of the reasons for the conviction and the evidence upon which it was based. (Doc. 7, Ex. K; Doc. 7, Ex. J; Doc. 1 at 10-11). The due process clause requires no more. *Wolff*, 418 U.S. at 556, 564-66 (1972). Therefore, the Court finds that Petitioner has not established that his disciplinary hearing at GCCF violated his constitutional rights. Furthermore, the Court finds that the state district court's decision was not contrary to, or involve an unreasonable application of clearly established federal law. The district court's decision is therefore entitled to deference. For those reasons, the Petition must be denied.

### IV.     Recommendation

Because Petitioner has failed to show that his constitutional rights were violated or that the state district court's decision was unreasonable, the Court **RECOMMENDS** that Mr. Jacobs' *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody*, (Doc. 1), be **DENIED ON THE MERITS**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day**

**period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE